UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHRISTOPHER O'ROURKE,

        Plaintiff,                                CASE NO.:

v.

83 OWNERS LLC and S.C.A.
RESTAURANT CORP. d/b/a ERMINIA,

        Defendants.
-------------------------------------------------------X

## COMPLAINT

Plaintiff, CHRISTOPHER O'ROURKE (hereinafter "Plaintiff"), sues Defendants 83 OWNERS LLC and S.C.A. RESTAURANT CORP. d/b/a ERMINIA (hereinafter "Defendants"), for injunctive relief, attorneys' fees and costs, including but not limited to disbursements, court expenses and fees, pursuant to 42 U.S.C. § 12181 *et seq.* (hereinafter "AMERICANS WITH DISABILITIES ACT" or "ADA") and the ADA Accessibility Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG"), and for injunctive relief and damages, pursuant to the NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL"), and the NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL") and alleges:

## JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims that arise out of the same nucleus of facts and circumstances as the subject federal claims.

2. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 in that the transaction or occurrence giving rise to this lawsuit occurred in the Southern District of New York.

3. The remedies provided by New York State Human Rights Law Against Discrimination are not exclusive and state administrative remedies do not need to be exhausted in connection with a lawsuit commenced pursuant to the Federal Civil Rights Act.

## THE PARTIES

4. At all times material hereto, Plaintiff, CHRISTOPHER O'ROURKE, was and is over the age of 18 years, *sui juris*, and is a resident of the State of New York.

5. Plaintiff has at all material times suffered from a "qualified disability" under the ADA. As a result of spinal stenosis, bilateral hip replacement, total knee replacement, spinal fusion, neuropathy affecting both legs with resultant muscular atrophy, as well as a steel rod in his right tibia and fibula, Plaintiff is severely limited in his ability to walk or traverse stairs, and must use a motorized wheelchair to travel more than a short distance. Plaintiff also has serious limitations in his arms and shoulders as a result of a shoulder replacement and other surgeries.

6. Defendant, S.C.A. RESTAURANT CORP., is a domestic business corporation authorized to conduct and conducting business within the State of New York, and is the operator of that certain restaurant known as ERMINIA located at 250 E. 83rd St., New York, NY 10028 (the "Subject Property").

7. Defendant, 83 OWNERS LLC, is a domestic limited liability company authorized to conduct and conducting business within the State of New York, and is the owner of that real property located at 250 E. 83rd St., New York, NY 10028.

8. The Subject Property is a place of public accommodation as that term is defined by the ADA; specifically, the Subject Property is a restaurant open to the general public.

9. Prior to the commencement of this action, Plaintiff personally visited the Subject Property; however, Plaintiff was denied full access to the facilities at the Subject Property, and/or any accommodations offered to the public therein, in that Plaintiff was restricted and limited by his disabilities, and therefore suffered an injury in fact. As of this filing, Plaintiff remains unable to visit and make use of the Subject Property, and continues to be discriminated against (and thus injured) by architectural barriers to access that remain at the Subject Property in violation of the ADA, the NYSHRL, and NYCHRL.

10. Separate and apart from any personal desire that may exist to patronize the Subject Property, Plaintiff traveled to the Subject Property and engaged barriers to access in order to advocate for the disabled as a tester.  The U.S. Supreme Court has addressed tester standing in the context of anti-discrimination lawsuits.[1]  A Plaintiff belonging to a class protected by an anti-discrimination statute may test whether a discriminatory practice exists, and is conferred with standing to sue on the basis of discriminatory practices encountered through those efforts.[2]

11. Plaintiff intends to return to the Subject Property after entry of an injunction in this case, and after compliance therewith by Defendants, in order to avail himself of the goods and services offered to the public therein, and/or to test for ADA compliance.

---

[1] Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74 (1982).

[2] *See, e.g.,* Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113 (3rd Cir. 1998) (noting that the "[t]he operative rule announced in Title III speaks not in terms of 'guests,' 'patrons,' 'clients,' 'customers,' or 'members of the public' but, instead, broadly uses the word 'individuals.'"); *see also, e.g.,* Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013)("This legal right created by §§12182(a) and 12182(b)(2)(A)(iv) does not depend on the motive behind Plaintiff Houston's attempt to enjoy the facilities of the Presidente Supermarket. The text of §§12182(a) and 12182(b)(2)(A)(iv) provides no basis for the suggestion that Plaintiff Houston's motive is relevant to this legal right." [emphasis in original]).

12. That all events giving rise to the instant action occurred in the City of New York, State of New York. Venue is proper in the Southern District of New York in that the Subject Property is located in the State of New York, County of New York.

## COUNT I
## VIOLATIONS OF THE ADA

13. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

14. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

15. Congress specifically found, *inter alia*, that:[3]

    a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    c. Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary

---

[3] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and,

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

16. Congress explicitly set forth the purpose of the ADA; to wit:[4]

   (i)   Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

   (ii)  Provide a clear, strong, consistent, enforceable standard addressing discrimination against individuals with disabilities; and,

   (iii) Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

17. The congressional legislation gave places of public accommodation a time period of up to one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA.

18. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[5]

---

[4] 42 U.S.C. § 12101(b) (1) (2) and (4).
[5] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

19. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").[6]

20. Upon information and belief, the Subject Property has begun operations, and/or has undergone substantial remodeling, repairs and/or alterations since January 26, 1992, and/or has sufficient income to make readily achievable accessibility modifications.

21. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[7]

22. The Subject Property is legally required to be, but is not, in compliance with the ADA and ADAAG.

23. Such non-compliance includes but is not limited to the following:

   a. Inaccessible entrance: accessible means of ingress and egress not provided as required, existing step into establishment acts as a barrier to accessibility; required ramp not provided for step at path of travel leading into establishment in violation of ADAAG §§ 206, 207, 303.

   b. Required minimum maneuvering clearance is not provided at the exterior side of the first of two series of doors at the entrance, and noncompliant change in level within required maneuvering clearance at exterior side of first of two series of doors at the entrance in violation of ADAAG § 404.

   c. Noncompliant door knob at first of two series of doors at the entrance requires twisting of the wrist in violation of ADAAG §§ 404, 309.

---

[6] 29 C.F.R. Part 36.
[7] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

d.  Required minimum space is not provided in the vestibule between two doors at the entrance in violation of ADAAG § 404.

e.  Required minimum maneuvering clearance is not provided at the exterior side of the second of two series of doors at the entrance in violation of ADAAG § 404.

f.  Required minimum clear width not provided at door opening of the second of two doors in a series at the entrance in violation of ADAAG § 404.

g.  Inaccessible dining tables: inaccessible travel path to dining tables, accessible route to dining tables not provided, and required minimum clear width not provide at travel path to dining tables in violation of ADAAG §§ 402, 403.

h.  Required minimum clear floor space positioned for a forward approach is not provided at the dining tables in violation of ADAAG §§ 226, 902, 305.

i.  Inaccessible restroom: travel to restroom does not provide the required minimum clear width path which acts as a barrier to accessibility in violation of ADAAG §§ 402, 403.

j.  Required compliant signage identifying the restroom is not provided in violation of ADAAG § 216.

k.  Required minimum door width at restroom door not provided in violation of ADAAG § 404.

l.  Required minimum maneuvering clearance at restroom door not provided in violation of ADAAG § 404.

m.  Noncompliant door knob and lock at restroom door requires twisting of the wrist in violation of ADAAG §§ 404, 309.

    n. Required minimum turning space within restroom not provided in violation of ADAAG §§ 304, 603.

    o. Inaccessible lavatory in restroom: required minimum clear floor space not provided at lavatory in violation of ADAAG §§ 606, 305.

    p. Insulation of pipes under the lavatory in restroom not provided as required in violation of ADAAG § 606.

    q. Inaccessible water closet in restroom: required minimum clear floor space not provided at water closet in violation of ADAAG § 604.

    r. Required grab bar on rear and side walls of water closet not provided in restroom in violation of ADAAG § 604.

    s. Inaccessible coat hook in restroom: noncompliant mounted height of coat hook exceeds maximum height allowance in violation of ADAAG §§ 606, 308.

24. This is not intended as a complete list of ADA and ADAAG violations at the Subject Property. Additional violations will be set forth within Plaintiff's expert disclosures and report, following inspection made pursuant to Fed. R. Civ. P. 34.

25. Plaintiff was and is blocked by physical barriers to access at the Subject Property, dangerous conditions, and ADA violations, existing upon the Subject Property, including those specified above. These violations, which include but are not limited to those enumerated herein, prohibit Plaintiff from safely accessing the Subject Property, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

26. Remediating the ADA and ADAAG violations set forth herein is both technically feasible and readily achievable.

27. Plaintiff intends to visit the Subject Property again in the future (upon Defendants' compliance with an Order of this Court requiring that Defendants remedy the subject ADA violations) in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations offered at the Subject Property; however, in light of his disabilities, unless and until the Subject Property is brought into full compliance with the ADA and its implementing regulations, Plaintiff will remain unable to fully, properly, and safely access the Subject Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

28. As a result of the foregoing, Defendants have discriminated against Plaintiff and others with disabilities, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property. Defendants' discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq*.

29. Moreover, Defendants will continue to discriminate against Plaintiff and others with disabilities unless and until it is compelled by this Court to remove all physical barriers upon the Subject Property which violate the ADA and ADAAG, including but not limited to those specifically set forth herein, and to make the Subject Property, accessible to and usable by persons with disabilities, including Plaintiff by making appropriate alternations to policies and procedures.

30. Plaintiff is without adequate remedy at law, and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations that exist upon the Subject Property, including but not limited to those set forth herein.

31. This Court is vested with authority to grant injunctive relief sought by Plaintiff, including entry of an Order requiring alteration and modification of the Subject Property, and/or alteration and modifications to Defendants' policies and procedures, so as to make the Subject Property readily accessible to and useable by individuals with disabilities to the extent required by law.

32. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorneys' fees, costs, and litigation expenses, all of which are recoverable against the Defendants.[8]

## COUNT II
## VIOLATIONS OF THE NYSHRL

33. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

34. The NYSHRL provides:

    > It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of . . . disability . . . .[9]

35. The Subject Property is a place of public accommodation as defined by the NYSHRL.

36. Plaintiff visited the Subject Property and encountered architectural barriers made illegal by the ADA and ADAAG, and by the NYSHRL.

37. By maintaining architectural barriers that discriminate against people with disabilities through the actions described above, Defendants have, directly or indirectly, refused, withheld, and/or denied to Plaintiff, because of his disability, the accommodations, advantages, facilities or

---

[8] 42 U.S.C. §§ 12205, 12117
[9] NYS Exec. Law § 296 (2)(a).

privileges thereof provided at the Subject Property. Failure by Defendants to act to identify and remove barriers can be construed as an act of "negligent per se."

38. Plaintiff has been damaged and will continue to be damaged by this discrimination as more fully set forth above and, in addition to injunctive relief, seeks judgment pursuant to N.Y. Exec. Law §297, including damages pursuant to § 297(9) thereof.

## COUNT III
## VIOLATIONS OF THE NYCHRL

39. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

40. The NYCHRL provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of . . . disability. . . .[10]

41. Defendants are in violation of the NYCHRL by denying the Plaintiff full and safe access to all the accommodations, benefits and services of the Subject Property.

## ATTORNEYS' FEES AND COSTS

42. Plaintiff has been obligated to retain the undersigned attorneys for purposes of filing and prosecuting this lawsuit. Pursuant to the ADA and NYCHRL, Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendants.

43. Plaintiff respectfully requests a judgment pursuant to N.Y. Exec. Law § 297, including compensatory damages contemplated by § 297(9).

---

[10] NYC Admin Code § 8-107(4)(a)

## DAMAGES

44. Plaintiff demands compensatory damages based on Defendants' violation of the NYSHRL and NYCHRL.

## INJUNCTIVE RELIEF

45. Plaintiff will continue to experience unlawful discrimination because of Defendants' failure to comply with the ADA, the NYSHRL, and NYCHRL.

46. Pursuant to 42 U.S.C. § 12188, this Honorable Court is vested with the authority to grant injunctive relief in favor of the Plaintiff, including but not limited to the issuance of an Order to alter the Subject Property so that they are made readily accessible to, and useable by, all individuals with disabilities, including Plaintiff, as required pursuant to the ADA, the NYSHRL, and NYCHRL, and closing the facilities until the requisite modifications are complete.

47. Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation, their policies, business practices, operations and procedures.

48. Injunctive relief is also necessary to make the Subject Property readily accessible and useable by Plaintiff in accordance with the ADA, the NYSHRL, and NYCHRL.

WHEREFORE, Plaintiff hereby demands judgment against the Defendants, jointly and severally, and requests the following injunctive and declaratory relief:

 a) A declaration that the Subject Property owned, leased, operated, and/or controlled by Defendants is in violation of the ADA, the NYSHRL, and NYCHRL;

 b) An Order requiring Defendants to evaluate and neutralize their policies, practices and procedures towards individuals with disabilities, for such

reasonable time to allow the Defendants to undertake and complete corrective procedures to Subject Property;

c) An Order requiring Defendants to alter their facilities and amenities to make them accessible to and useable by individuals with disabilities as required pursuant to Title III of the ADA, the NYSHRL, and NYCHRL;

d) An Order issuing a permanent injunction ordering Defendants to close the Subject Property and cease all business until Defendants remove all violations under the ADA, the NYSHRL, and NYCHRL, including but not limited to the violations set forth herein;

e) An award of reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of the Plaintiff; and

f) For such other and further relief that this Court deems just, necessary and proper.

DATED this **9th** day of **August,** 2018.

Respectfully Submitted,

**LAW OFFICES OF NOLAN KLEIN, P.A.**
*Attorneys for Plaintiff*
39 Broadway, Ste. 2250
New York, NY 10006
PH:   (646) 560-3230
FAX:  (877) 253-1691

By: _/s/ Nolan Klein_
NOLAN KLEIN, ESQUIRE
(NK4223)
klein@nklegal.com
amy@nklegal.com